# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| CATHY KAHN MCSWEENEY (f/k/a Cathy Kahn Slechta); JARROD CHARLES SLECHTA; and ADAM KAHN SLECHTA, AMANDA GAIL SLECHTA, JORDAN TURC SLECHTA, and ANNA MARIE MCSWEENEY, all minors, by and through CATHY KAHN MCSWEENEY, as their Next Friend and Natural Guardian, | CIVIL ACTION NO. 4:05-CV-132-HLM |
| Plaintiffs, | Conference is requested |
| v. | |
| ROGER F. KAHN; ELLIOTT COHEN, Individually and as Co-Trustee of the CKS Irrevocable Trust; and COHEN POLLOCK MERLIN AXELROD & SMALL, P.C. a Georgia professional corporation (f/k/a COHEN POLLOCK MERLIN AXELROD & TANENBAUM, P.C.), | |
| Defendants. | |

## PROPOSED CONSOLIDATED PRETRIAL ORDER

### 1.

There are no motions or other matters pending for consideration by the court except as noted:

Plaintiffs:   None, except that the Plaintiffs are filing a <u>Daubert</u> motion contemporaneously with the filing of this pre-trial order for the purpose of excluding expert testimony from James Walsh.   Plaintiffs will file motions in limine seven days prior to trial, as specified in the Court's November 15, 2007 Order.

Defendant:  Currently, no motions are pending for consideration by the court.  However, Mr. Kahn will be filing a motion to exclude the expert testimony of Henry J. Wise in accordance with the Federal Rules of Civil Procedure. Additionally, Mr. Kahn will be filing motions in limine and any trial briefs no later than seven (7) days before the trial is scheduled to begin in accordance with the Court's November 15, 2007 Order.

## 2.

**All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.**

Plaintiffs:   Plaintiffs maintain that discovery is completed and that it is improper for Defendant to attempt to interject discovery issues into this pre-trial order that were not made by motion within the time provide for by L.R. 37.1.B.

<u>Defendant</u>: Mr. Kahn has requested supplementation of Plaintiffs' discovery responses pursuant to Federal Rule of Civil Procedure 26(c)(2) and Local Rule 26.1(c).  Plaintiffs have agreed only to supplement in part.  Mr. Kahn reserves the right to raise this issue in the event the parties cannot agree on the issue of supplementation of discovery responses.

Additionally, Mr. Kahn has requested that Plaintiff Children produce the printouts of any websites that they have created or assisted in creating.  Not only have Plaintiff Children refused to produce such documents, but after Plaintiff Children received Mr. Kahn's request for documents, they changed their websites and shielded them from public view.  Mr. Kahn reserves the right to raise the issue of document production and spoliation of evidence if the parties cannot agree on this issue prior to trial.

**3.**

**Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.**

Cathy Kahn McSweeney is now known as Cathy Kahn Duke.  Roger F. Kahn is the only remaining Defendant in this case.

**4.**

**Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)**

Count I:  Breach of Fiduciary Duty:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000. (28 U.S.C. § 1332).

Count II:  Breach of Fiduciary Duty (Confidential Relationship):  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000. (28 U.S.C. § 1332).

Count IV:  Fraud:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000. (28 U.S.C. § 1332).

Count V:  Civil Conspiracy:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000. (28 U.S.C. § 1332).

Count VI:  Unjust Enrichment:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000.  (28 U.S.C. § 1332).

Count VII:  Conversion:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000.  (28 U.S.C. § 1332).

Count XI:  Accounting:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000.  (28 U.S.C. § 1332).

<u>Count XII:  Punitive Damages</u>:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000.  (28 U.S.C. § 1332).

<u>Count XIII:  Attorneys' Fees</u>:  Jurisdiction based on diversity of citizenship and amount in controversy in excess of $75,000. (28 U.S.C. § 1332).

\*  Counts III, VIII, IX, and X were asserted exclusively against Defendants that are no longer parties to this lawsuit.  Accordingly, evidence with respect to these Counts will not be presented at trial.

**5.**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

**Plaintiffs:**   Charles T. Huddleston, Esq.
Arnall Golden Gregory, LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia  30363
(404) 873-8674
(404) 873-8675 (Facsimile)

**Defendant:** William M. Droze, Esq.
Georgia Bar No. 231039
Troutman Sanders, LLP
600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, Georgia  30308
(404) 885-3000
(404) 885-3900 (Facsimile)
Additional Counsel:   Troutman Sanders LLP
Daniel S. Reinhardt
Georgia Bar No. 600350
Steven J. Hewitson

Georgia Bar No. 350398
Anne P. Caiola
Georgia Bar No. 142639

Brinson, Askew, Berry, Seigler, Richardson
     & Davis, LLP
Robert M. Brinson
Georgia Bar No. 082900
A. Franklin Beacham, III
Georgia Bar No. 043743
P.O. Box 5513
Rome, Georgia 30162-5513
(706) 291-8853
(706) 234-3574 (fax)

**6.**

**Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.**

There is no reason why Plaintiffs should not be permitted to open and close

arguments to the jury.  Plaintiffs will open and close arguments to the jury.

**7.**

**The captioned case shall be tried (X) to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.**

**8.**

**State whether the parties request that the trial to a jury be bifurcated, i.e., that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.**

**<u>Plaintiffs</u>:**

Plaintiffs do not wish the trial to a jury to be bifurcated.  Under Fed. R. Civ. P. 42(b), "bifurcation of issues for trial is not routinely ordered."  <u>Brown v. Advantage Engineering</u>, 732 F. Supp. 1163, 1170 (N.D. Ga. 1990).  Further, the District Court is to consider various factors in deciding whether to bifurcate pursuant to Fed. R. Civ. P. 42(b):  (1) Convenience; (2) Prejudice; (3) Expedition; and (4) Economy; (5) Whether the issues sought to be tried separately are significantly different; (6) Whether they are triable by a jury or the court; (7) Whether discovery has been directed to a single trial of all issues; (8) Whether the evidence required for each issue is significantly different; (9) Whether one party would gain some unfair advantage from separate trials; (10) Whether a single trial of all issues would create the potential for jury bias or confusion; and (11) Whether bifurcation would enhance or reduce the possibility of pretrial settlement.  <u>See Kimberly Clark Corp. v. James River Corp.</u>, 131 F.R.D. 607, 609 (N.D. Ga. 1989). An analysis of each of these factors in this case militates against bifurcation of the trial.

To the extent the Court deems bifurcation appropriate, Defendant's request for a limitation on net worth evidence made as part of this pre-trial order should be denied.  As this Court has previously recognized, Defendant Kahn's net worth

information is relevant to Plaintiffs' fraud claims.  See September 18, 2006 Order, Doc. No. 163, pp. 49-50.  Therefore, some or all of Defendant Kahn's net worth information will be tendered by Plaintiffs as part of their case.

**Defendant**:

Mr. Kahn seeks bifurcation of the trial relative to Plaintiffs' claim for punitive damages.  Under Georgia law, a jury does not consider a punitive damage award amount, and evidence related thereto, until after it first determines that the defendant is liable for punitive damages.  See O.C.G.A. § 51-5-5.1(d); Webster v. Boyett, 269 Ga. 191, 192 (1998) ("O.C.G.A. § 51-15-5.1(d)(1) expressly requires a bifurcation of the punitive damages issues.").  After the jury first determines punitive damages are warranted, "the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case."  O.C.G.A. § 51-12-5.1(d)(2).  This bifurcation procedure ensures evidence the jury is likely to use for improper and impermissible purposes is admitted only where required and necessary.

The Plaintiffs seek an award of punitive damages, alleging that Mr. Kahn engaged in conduct sufficient to support such damages.  Plaintiffs further allege Mr. Kahn undertook certain actions with specific intent to harm Plaintiffs, thereby

seeking to avoid O.C.G.A. § 51-12-5.1(f)'s $250,000.00 punitive damages cap.  To support the punitive damage claim, Plaintiffs attempt to introduce evidence of Mr. Kahn's net worth and evidence showing Mr. Kahn's purported specific intent to harm Plaintiffs.  Such evidence is highly prejudicial and is not admissible during the liability phase of trial.  Therefore, the Court should bifurcate the damage portion of the punitive damage claim, and allow Plaintiffs to introduce net worth evidence and evidence tending to show Mr. Kahn acted with specific intent to harm them only **after** the jury has determined punitive damages are warranted, if the jury even makes such a determination.

### A.      *Georgia Law Requires Bifurcation.*

Under Georgia law, a jury does not consider a punitive damage award amount, and evidence related thereto, until after it first determines that the defendant is liable for punitive damages.  See O.C.G.A. § 51-5-5.1(d); Webster v. Boyett, 269 Ga. 191, 192 (1998) ("O.C.G.A. § 51-15-5.1(d)(1) expressly requires a bifurcation of the punitive damages issues.").  After the jury first determines punitive damages are warranted, "the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case."  O.C.G.A. § 51-12-5.1(d)(2).  This bifurcation

procedure ensures evidence the jury is likely to use for improper and impermissible purposes is admitted only where required and necessary.

Such evidence includes Mr. Kahn's net worth, which is otherwise irrelevant and highly prejudicial.  See State Farm Fire & Cas. Co. v. Woods, 896 F. Supp. 658, 660 (E.D. Tex. 1995) (noting that while evidence of financial status is relevant to determining an award of punitive damages, the same evidence is "severely prejud[icial]" to a defendant in the liability and actual damage phase of the trial).  Evidence related to Mr. Kahn's purported specific intent to harm Plaintiffs is also irrelevant, unless and until the jury determines that Mr. Kahn is liable for punitive damages.  This type of evidence is unnecessary and not helpful to the jury's liability determination.  Moreover, this evidence is highly likely to improperly influence both the jury's liability finding and its compensatory damage award; therefore, the evidence is better reserved until after the jury determines liability for punitive damages.  See Holman v. Burgess, 199 Ga. App. 61, 63 (1991) (stating that evidence of net worth may be admissible **after** a jury has determined punitive damages are warranted).

### B.   Georgia's Bifurcation Requirement Controls.

Federal Courts sitting in diversity must apply state law to substantive issues. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).   O.C.G.A. § 51-15-5.1

provides defendants in Georgia the substantive guaranty that juries will not consider their net worth, or evidence of their acting with specific intent to harm, in determining liability for compensatory and punitive damages. Preventing juries from hearing this evidence is "fundamental to the resolution of punitive damages" issues under Georgia law. See Wilson v. Gillis Advert. Co., 145 F.R.D. 578 (N.D. Ala. 1993) (finding that Alabama's rule forbidding discovery of net worth until after a jury decides punitive damages are warranted is fundamentally substantive in nature).

Moreover, the Georgia legislature has made it clear that this type of inflammatory evidence is not part of the *prima facie* case, but rather is better reserved for consideration **after** the jury determines liability for punitive damages. Indeed, a very element of Georgia's punitive damage statute is the requirement of delay in presenting support for a punitive damage monetary award. See Holman, 199 Ga. App. 61 (discussing Georgia's enactment of the 1987 Tort Reform Act, which established the defendant's right not to be confronted with evidence of punitive damages until liability for the same has been established). See also Boyette v. Am. Int'l Adjustment Co., No. 1:90-CV-875-WCO, 1994 U.S. Dist. LEXIS 4594 at *36 (N.D. Ga. March 31, 1994) (recognizing that Erie may require the application of Georgia's bifurcation procedure in diversity cases). Because the

Georgia law that prohibits consideration of this evidence during the liability phase of trial is substantive under <u>Erie</u>, the Court should apply O.C.G.A. § 51-15-5.1 and bifurcate the punitive damages award portion of the trial.

However, if the Court finds that the bifurcation requirement is procedural in nature, it should nevertheless bifurcate the trial because there is no federal rule expressly governing this issue. The United States Supreme Court instructed that pursuant to the Rules Enabling Act, when a federal rule governing the procedural issue exists, the federal rule will control so long as it is constitutional. <u>Hanna v. Plummer</u>, 380 U.S. 460 (1965). Here, however, there is no federal rule requiring a district court to admit evidence related to net worth and specific intent to harm during the liability phase of trial. The Georgia requirement mandating exclusion of such evidence until the punitive monetary award phase is not inconsistent with Rule 42(b), which permits a federal court to bifurcate a trial to avoid prejudice; rather, the rules can be read together, without conflict, to exclude evidence of punitive damages until the appropriate phase of trial. Thus, the Rules Enabling Act does not operate to supersede Georgia's punitive damage proof procedures under <u>Hanna</u>.

Where the Federal Rules of Civil Procedure do not supplant a state procedural law under <u>Hanna</u>, the Supreme Court has held that the district court

must balance the competing state and federal interests under <u>Byrd v. Blue Ridge Rural Elec. Coop. Inc.</u>, 356 U.S. 525 (1958).  The district court must weigh the state's interest in having the federal court uphold its substantive laws against the federal court's interests, while considering the likelihood of forum shopping.  <u>Id.</u> at 536-40.  If the state's interests outweigh the federal court's interests, the district court should apply the state substantive law.  <u>Id.</u>  Here, Georgia has expressed the importance of protecting a defendant's due process rights by precluding plaintiffs from using inflammatory evidence at improper points during trial.  Georgia courts expressly uphold the bifurcation process, recognizing the legislature's efforts to ensure fair and just trial results.  Moreover, the federal interest here is minimal, as Plaintiffs' allegations arise solely under state law, and the Federal Rules of Civil Procedure expressly grant district courts authority to bifurcate trials in the manner Mr. Kahn suggests.  <u>See</u> Fed.R.Civ.P. 42(b).

Finally, to hold otherwise is likely to encourage forum shopping.  Plaintiffs seeking to prejudice the jury by introducing such evidence during the liability phase of a trial will find creative ways to bring claims in federal court, thereby avoiding the protections afforded by Georgia's laws to defendants facing a punitive damages claim.

In sum, Georgia's bifurcation requirement is substantive in nature, and therefore <u>Erie</u> requires this Court to apply Georgia law.  However, even if found to be procedural in nature, because a Federal Rule of Civil Procedure does not expressly govern the issue, the Court should apply Georgia's bifurcation requirement because Georgia's interest substantially outweighs any federal interest involved.  Finally, this result eliminates any risk of forum shopping, because plaintiffs are held to the same standard whether in state or federal court.

### C.   *Rule 42(b) Permits Bifurcation of the Punitive Damages Issue*.

To the extent <u>Erie</u> and its progeny do not require express application of Georgia's punitive damages procedures, the Court should nevertheless bifurcate the punitive damage award aspect of this case pursuant to Rule 42(b), which provides that a "court, in the furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim."  Fed.R.Civ.P. 42(b).

Here, the Court should use its discretion under Rule 42(b) to preclude Plaintiffs from introducing evidence during the liability phase that would be prejudicial to Mr. Kahn.  As the Second Circuit has stated:

> Since it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method of accommodating the various interest is to delay trial as to the amount of an award of

punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all.

Smith v. Lightening Bolt Prods., 861 F.2d 363, 373-74 (2d Cir. 1988).  See also

Cain v. Pittsburgh Corning Corp., No. 90-16668, 1992 U.S. App. LEXIS 8568 at

*3-4 (9th Cir. April 20, 2002) ("The most common reason for bifurcating is to

exclude evidence of the defendant's wealth or net worth from the compensatory

damages phase."); North Dakota Fair Housing Council, Inc. v. Allen, 298 F. Supp.

2d 897, 899 (D.N.D. 2004) ("The Court agrees with the concept that evidence of

the defendants' financial condition and net worth would not be presented to the

jury during the first phase of the trial on liability and compensatory damages.

Evidence of the defendants' net worth, although relevant to issues concerning the

claim for punitive damages, can have an adverse effect on jury deliberations

concerning liability and compensatory damages.").

The likelihood of substantial prejudice to Mr. Kahn is great should the jury

be allowed to consider his financial worth in determining whether to compensate

the Plaintiffs for alleged legal wrongs; the jury will be tempted to compromise Mr.

Kahn's defenses upon learning of his personal financial circumstances, especially

given the relative difference between the net worth of Mr. Kahn and that of

Plaintiffs.  Indeed, Plaintiffs have foreshadowed their plan to highlight at trial Mr.

Kahn's wealth versus Plaintiffs' relative lack thereof.  <u>See</u>, <u>e.g.</u>, Plaintiff's Motion to Compel Tax Returns and related briefing [Docs. 100 at 7, 10; 150 at 3].

Further, presenting evidence of Mr. Kahn's net worth will necessarily burden the pace of trial.  Evidence offered by both sides will be voluminous, and likely will direct attention away from the central legal issues in the case.  This is the very situation Rule 42(b) contemplates.  The Plaintiffs indeed may have the right to present evidence of Mr. Kahn's net worth and his purported attempts to specifically harm Plaintiffs, yet not until they have succeeded in showing they are entitled to punitive damages.  This result ensures the jury does not consider improper evidence during the liability phase, but provides to Plaintiffs the opportunity to timely offer relevant evidence to support their punitive damage prayer.

**9.**

**Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.**

See Attachment "A".

**10.**

**Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.**

See Attachment "B-1".

**Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination**.

See Attachment "B-2".

**Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.**

Not applicable.

**The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.**

## 11.

**State any objections to plaintiff's voir dire questions:**

Mr. Kahn objects to the following proposed voir dire questions by Plaintiffs as duplicative, not supported by the evidence and prejudicial:  28; 29; 30; 31; 32; 33; 34; 37; 38; 41; 43; 44; 45; 46; 47; 51; 52; 56; 60; 62; and 65.

**State any objections to defendant's voir dire questions:**

None.

## 12.

**All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate**

**otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).**

Plaintiffs are unaware at this time of any need to request additional strikes.

Mr. Kahn reserves the right to review the venier prior to determination of any final strikes.

## 13.

**State whether there is any pending related litigation. Describe briefly, including style and civil action number.**

None.

## 14.

**Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

See Attachment "C".

**15.**

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

See Attachment "D".

**16.**

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

See Attachment "E".

**17.**

The legal issues to be tried are as follows:

<u>Plaintiffs:</u>

(1)   Whether Defendant Roger Kahn breached his fiduciary duty to Plaintiffs as beneficiaries of the Max Kahn Estate and the MEK Irrevocable Trust.

(2)     Whether Defendant Roger Kahn breached his fiduciary duty to Plaintiff Kathy Kan Duke as a person with whom he shared a confidential relationship.

(3)     Whether Defendant committed a fraud on Plaintiff Cathy Kahn Duke by misrepresenting or otherwise concealing material facts upon which Plaintiff Cathy Kahn Duke relied to her detriment.

(4)     Whether Defendant Roger Kahn formed and engaged in a civil conspiracy to Plaintiffs' detriment.

(5)     Whether Defendant Roger Kahn was unjustly enriched to the detriment of Plaintiffs.

(6)     Whether Defendant Roger Kahn converted the assets and property of Plaintiffs to his own use and to the detriment of Plaintiffs.

(7)     Whether Defendant Roger Kahn should account to Plaintiffs for (i) money and property removed from the CKS Trust, and (ii) Plaintiffs money and property that Defendant Roger Kahn put to his own use.

(8)     Whether a constructive trust should be imposed on all money and property taken from Plaintiffs by Defendant Roger Kahn, including but not limited to Plaintiffs' interest in Swallow Hopkins and whether the Swallow Hopkins interest (which is still generating cash distributions) should be returned to Plaintiffs.

(9)     Whether Plaintiffs are entitled to an award of punitive damages from Defendant Roger Kahn.

(10)    Whether Defendant Kahn acted with specific intent to harm Plaintiffs.

(11)    Whether Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and expenses.

**<u>Defendant:</u>**

1.  Whether Plaintiffs have proven the elements of breach of fiduciary duty;

2.  Whether Plaintiffs have proven the elements of fraud;

3.  Whether Plaintiffs have proven the elements of unjust enrichment;

4.  Whether Plaintiffs have proven the elements of civil conspiracy;

5.  Whether Plaintiffs have proven the elements of conversion;

6.  Whether Plaintiffs are entitled to punitive damages;

7.  Whether Plaintiffs have proven that Mr. Kahn acted with a specific intent to harm Plaintiffs;

8.  Whether Plaintiffs have proven that they are entitled to attorneys fees;

9.  Whether Plaintiffs have proven that they are entitled to an accounting;

10. Whether some or all of the relief demanded by Plaintiffs is barred by the defense of consent;

11. Whether some or all of the relief demanded by Plaintiffs is barred by the defense of subsequent affirmation;

12. Whether some or all of the relief demanded by Plaintiffs is barred by the terms, conditions, limitations, and exclusions of the CKS Trust, the Last Will and Testament of Max E. Kahn, or the Assignment Receipt and Release Agreement;

13. Whether some or all of the relief demanded by Plaintiffs is barred by the applicable statutes of limitation or repose;

14. Whether some or all of the relief demanded by Plaintiffs is barred by the equitable defense of laches;

15.     Whether some or all of the relief demanded by Plaintiffs is barred by their own conduct;

16.     Whether some or all of the relief demanded by Plaintiffs is barred by the doctrine of unclean hands;

17.     Whether some or all of the relief demanded by Plaintiffs is barred by the doctrine of waiver;

18.     Whether some or all of the relief demanded by Plaintiffs is barred by the equitable defense of estoppel;

19.     Whether some or all of the relief demanded by Plaintiffs is barred by the doctrine of judicial estoppel;

20.     Whether Mr. Kahn proximately caused the damages that were allegedly sustained by Plaintiffs;

21.     Whether Mr. Kahn acted in good faith and in conformity with law at all times relevant to the subjects alleged in Plaintiffs' Second Amended Complaint;

22.     Whether some or all of the relief demanded by Plaintiffs is barred by actions in conformance with written contracts;

23.     Whether Mr. Kahn can be held jointly and severally liable with any other defendant;

24.     Whether some or all of the relief demanded by Plaintiffs is barred by the voluntary payment doctrine;

25.     Whether some or all of the relief demanded by Plaintiffs is barred by the defense of payment;

26.     Whether some or all of the relief demanded by Plaintiffs is barred by the defense of release;

27.     Whether some or all of the relief demanded by Plaintiffs is barred by the defense of accord and satisfaction;

28.     Whether Plaintiffs are precluded from recovering any equitable relief based upon the existence of an adequate legal remedy and/or the terms of written contracts;

29.     Whether some or all of the relief demanded by Plaintiffs is barred by their failure to name indispensable parties to this action; and

30.     Whether the imposition of punitive damages or the application of O.C.G.A. § 51-12-5.1 to Mr. Kahn is unconstitutional and in violation of the Eighth Amendment of the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia.

**18.**

   **Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.**

   **All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means.**

   **Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.**

   See Attachment "F-1" and Attachment "F-2".

**19.**

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list. Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised.

Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

**Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.**

See Attachment "G-1" and Attachment "G-2".

**20.**

**The following designated portions of the testimony of the persons listed below may be introduced by deposition:**

The parties' designations of deposition testimony are included below. Objections to the deposition testimony designated below shall be served no later than thirty (30) days prior to the start of trial. Subject to the Court's approval, the parties have agreed that they may identify additional portions of deposition testimony for use at trial, provided that they provide such designations to the other party at least thirty (30) days prior to trial. Objections to any additional deposition testimony so designated by the parties will be due no later than seven (7) days prior to the start of trial.

**Plaintiffs:**

**Leonard Abess: September 28, 2006**

| Page | 6:4 | through | 7:23 |
|------|------|---------|------|
| Page | 8:2 | through | 10:03 |
| Page | 12:2 | through | 13:13 |
| Page | 13:23 | through | 14:10 |
| Page | 14:17 | through | 21:7 |
| Page | 21:17 | through | 23:20 |
| Page | 24:19 | through | 28:06 |

| | | | |
|---|---|---|---|
| Page | 30:10 | through | 35:25 |
| Page | 37:25 | through | 38:15 |
| Page | 38:24 | through | 40:21 |
| Page | 41:03 | beginning "Does That" through | 41:10 |
| Page | 41:19 | through | 42:25 |
| Page | 45:02 | through | 57:11 |
| Page | 63:08 | through | 64:17 |
| Page | 65:08 | through | 67:12 |
| Page | 69:20 | through | 72:11 |

## George Hodges: September 15, 2006

| | | | | |
|---|---|---|---|---|
| Page | 5:7 | through | 7:17 | |
| Page | 9:15 | through | 25:9 | |
| Page | 30:24 | through | 32:12 | |
| Page | 38:9 | through | 39:23 | |
| Page | 40:7 | through | 41:5 | Ending with "the first" |
| Page | 42:9 | through | 45:5 | |
| Page | 45:10 | through | 45:12 | |
| Page | 45:23 | beginning "But in" through | 46:11 | Ending with "rolling option" |
| Page | 49:23 | through | 53:22 | |
| Page | 54:11 | through | 56:5 | |
| Page | 56:13 | through | 58:21 | |
| Page | 59:8 | through | 63:11 | |
| Page | 64:6 | through | 66:11 | |
| Page | 66:24 | through | 68:14 | |
| Page | 68:21 | through | 76:16 | |
| Page | 81:2 | through | 82:4 | |
| Page | 83:20 | through | 84:7 | |
| Page | 85:6 | through | 86:8 | |
| Page | 87:4 | through | 89:14 | |
| Page | 90:11 | through | 92:14 | |

| Page | 95:12 | through | 96:14 |
|------|-------|---------|-------|
| Page | 100:16 | through | 102:4 |
| Page | 102:22 | through | 105:7 |
| Page | 106:9 | through | 108:10 |

## Jan Coleman: August 17, 2006

| Page | 17:20 | through | 20:5 | |
|------|-------|---------|------|--|
| Page | 21:6 | through | 25:20 | |
| Page | 29:2 | through | 29:3 | End with "Exhibit 65" |
| Page | 29:17 | through | 30:14 | |
| Page | 33:8 | through | 37:5 | |
| Page | 47:8 | through | 47:15 | |
| Page | 77:10 | through | 79:3 | |
| Page | 123:10 | through | 126:20 | |
| Page | 127:15 | through | 129:7 | |
| Page | 130:1 | through | 132:5 | |
| Page | 134:1 | through | 137:10 | |
| Page | 138:1 | through | 139:9 | |
| Page | 142:8 | through | 146:20 | |
| Page | 148:8 | through | 149:1 | |
| Page | 154:1 | through | 166:2 | |
| Page | 168:5 | through | 169:2 | |
| Page | 172:8 | through | 174:13 | |

## Irving Lehrer:  September 28, 2006

| Page | 6:11 | through | 12:7 |
|------|------|---------|------|
| Page | 12:17 | through | 25:20 |
| Page | 26:1 | through | 40:21 |
| Page | 58:1 | through | 59:22 |
| Page | 60:24 | through | 65:12 |

Plaintiffs reserve the right to supplement their designations based upon evidence presented at trial and for purposes of impeachment and/or rebuttal.

**<u>Defendant</u>:**

Mr. Kahn may introduce by deposition the following designated portions of

testimony:

**<u>Leonard Abess:  September 28, 2006</u>**

| | | | | |
|---|---|---|---|---|
| Page | 6:4 | through | 7:23 | |
| Page | 8:2 | through | 10:3 | |
| Page | 12:2 | through | 14:4 | |
| Page | 15:8 | through | 15:22 | |
| Page | 17:5 | through | 19:8 | |
| Page | 21:17 | through | 22:14 | |
| Page | 23:1 | through | 23:20 | |
| Page | 27:12 | through | 28:8 | |
| Page | 31:3 | through | 31:18 | |
| Page | 32:15 | through | 35:22 | |
| Page | 37:12 | through | 37:22 | |
| Page | 43:25 | through | 44:6 | |
| Page | 44:22 | through | 45:1 | Begins at "Do you know" |
| Page | 46:9 | through | 46:25 | |
| Page | 47:8 | through | 47:13 | |
| Page | 47:18 | through | 47:20 | |
| Page | 48:7 | through | 48:17 | |
| Page | 48:22 | through | 49:1 | |
| Page | 50:2 | through | 50:5 | |
| Page | 56:25 | through | 57:2 | |
| Page | 58:7 | through | 58:11 | |
| Page | 61:7 | through | 61:10 | |
| Page | 62:7 | through | 62:10 | |
| Page | 63:8 | through | 64:20 | |
| Page | 65:17 | through | 67:2 | |
| Page | 67:6 | through | 67:15 | |
| Page | 67:17 | through | 67:19 | |
| Page | 68:1 | through | 68:19 | |
| Page | 69:9 | through | 69:13 | |
| Page | 73:2 | through | 73:8 | |

Page        73:10    through    74:6      Begins at "Exhibit 336"
Page        74:8     through    74:10


**Elliott Cohen:  August 29, 2006 (Vol. I) and September 18, 2006 (Vol. II)**

Page        16:12    through    17:1
Page        17:14    through    20:10
Page        20:24    through    22:18
Page        24:10    through    25:2
Page        26:2     through    26:8
Page        29:2     through    29:25
Page        30:12    through    30:15
Page        31:12    through    32:6
Page        33:3     through    33:6
Page        34:2     through    34:18
Page        35:10    through    35:17
Page        44:2     through    44:8      Ends with "present themselves"
Page        45:2     through    46:21
Page        51:1     through    51:1      Ends with "Exhibit 121"
Page        51:18    through    52:3
Page        52:23    through    53:4
Page        54:4     through    54:9
Page        58:9     through    59:18
Page        63:7     through    63:15
Page        63:24    through    64:10
Page        65:22    through    66:11
Page        68:10    through    68:14
Page        69:1     through    69:5
Page        69:17    through    69:21
Page        70:3     through    70:8
Page        70:12    through    71:2
Page        71:20    through    71:23
Page        72:2     through    72:21
Page        73:4     through    73:16
Page        74:12    through    74:21
Page        75:3     through    75:18
Page        75:22    through    76:6

Page     76:14    through    77:13    Begins at "If"
Page     79:10    through    79:19
Page     83:15    through    83:25
Page     84:22    through    85:4
Page     85:9     through    85:17
Page     88:3     through    88:21
Page     89:17    through    90:2
Page     98:8     through    98:10
Page     98:22    through    98:22
Page     99:17    through    100:4
Page     100:13   through    101:7
Page     103:19   through    104:9
Page     105:19   through    106:6
Page     107:2    through    107:22
Page     108:4    through    108:14
Page     110:9    through    110:20
Page     114:14   through    116:18
Page     117:12   through    117:13
Page     121:22   through    123:15
Page     129:22   through    130:13
Page     131:12   through    131:16
Page     132:17   through    132:25
Page     133:4    through    133:10
Page     133:25   through    134:4
Page     134:9    through    134:11
Page     134:15   through    134:18
Page     135:5    through    135:15
Page     136:5    through    136:16
Page     136:20   through    137:10
Page     139:15   through    139:17   Ends with "McSweeney"
Page     139:25   through    140:4

*Volume II*

Page     191:18   through    191:23
Page     203:15   through    204:2
Page     212:10   through    212:11
Page     212:20   through    212:21

Page        214:19   through   215:23
Page        216:23   through   216:25
Page        220:6    through   220:13
Page        220:24   through   221:25
Page        234:14   through   235:2
Page        235:6    through   235:9
Page        242:24   through   243:7
Page        243:22   through   244:11
Page        247:21   through   247:23
Page        247:25   through   247:25
Page        261:3    through   261:24
Page        267:20   through   268:12
Page        276:1    through   276:3
Page        276:5    through   276:5
Page        270:9    through   270:23
Page        272:18   through   272:19   Ends with "Exhibit 111"
Page        273:4    through   273:15
Page        275:19   through   275:25


**Jan Coleman:  August 17, 2006**

Page        18:21    through   19:6
Page        20:9     through   20:13
Page        21:6     through   22:14
Page        24:19    through   25:20
Page        26:4     through   27:16
Page        33:8     through   34:5
Page        34:18    through   35:8
Page        36:5     through   36:17
Page        38:3     through   39:14
Page        40:4     through   42:15   Begins at "And do you"
Page        43:1     through   44:7
Page        47:8     through   47:15
Page        53:1     through   54:5
Page        54:8     through   55:2
Page        55:4     through   55:7
Page        55:10    through   55:10

Page        69:6     through    71:7
Page        71:21    through    72:1
Page        72:5     through    72:9
Page        79:15    through    80:21
Page        83:14    through    84:14
Page        85:20    through    87:8
Page        87:12    through    88:2
Page        92:8     through    93:1
Page        94:15    through    95:4
Page        97:4     through    97:7
Page        97:9     through    97:12
Page        97:17    through    97:21
Page        98:16    through    99:12
Page        102:5    through    102:18
Page        103:11   through    104:9
Page        116:9    through    116:15
Page        117:10   through    119:2
Page        120:16   through    122:3
Page        125:17   through    126:6
Page        134:21   through    135:9
Page        137:14   through    139:7
Page        147:13   through    147:17
Page        148:9    through    148:19
Page        151:3    through    151:9
Page        152:7    through    152:9
Page        152:11   through    152:16
Page        156:2    through    157:15
Page        162:14   through    163:16
Page        170:9    through    172:7     Begins at "Do you recall"
Page        175:13   through    175:18


## Larry Coleman:  August 17, 2006

Page        8:15     through    10:17
Page        12:6:    through    12:11
Page        18:2     through    20:4
Page        23:19    through    25:11

Page        25:13    through    27:7
Page        29:1     through    29:10
Page        29:14    through    30:1
Page        31:6     through    33:5
Page        36:11    through    37:1
Page        40:2     through    40:12
Page        44:14    through    45:11
Page        71:9     through    72:3
Page        74:3     through    74:18
Page        74:20    through    75:10
Page        81:21    through    82:11

## George Hodges:  September 15, 2006

Page        5:7      through    7:6
Page        7:12     through    18:6
Page        20:10    through    30:23
Page        31:13    through    40:5
Page        40:25    through    45:9
Page        45:13    through    45:25
Page        46:14    through    47:10
Page        49:23    through    51:5
Page        55:24    through    56.5
Page        66:12    through    66:16
Page        78:18    through    79:8
Page        80:20    through    81:1
Page        82:13    through    82:21
Page        83:16    through    83:19
Page        86:9     through    86:13
Page        87:11    through    89:21
Page        92:15    through    93:10
Page        93:12    through    93:17
Page        93:19    through    93:23
Page        97:7     through    97:17
Page        97:25    through    98:7
Page        98:13    through    98:13
Page        98:21    through    99:2
Page        102:5    through    102:16

Page        108:17   through    108:20
Page        108:22   through    108:25


## Alex Howard:  September 26, 2006

Page        4:3      through    13:6
Page        13:19    through    15:20
Page        16:17    through    17:6
Page        19:10    through    20:8
Page        20:13    through    22:16
Page        23:2     through    23:5
Page        24:15    through    24:21
Page        24:23    through    24:23    Ends with "yes."
Page        26:6     through    28:7
Page        28:17    through    29:21
Page        30:3     through    31:3     Begins at "And where"
Page        38:5     through    38:24
Page        47:8     through    47:13
Page        48:18    through    49:17
Page        53:10    through    53:20


## Irving J. Lehrer:  September 28, 2006

Page        6:12     through    6:18
Page        6:23     through    10:7
Page        10:25    through    11:7
Page        12:17    through    14:9
Page        14:23    through    14:25
Page        15:6     through    15:14
Page        17:10    through    18:2
Page        18:13    through    18:19
Page        19:2     through    20:6
Page        21:7     through    23:22
Page        25:10    through    25:16
Page        29:15    through    30:5
Page        31:13    through    32:13

Page      32:21    through    33:16
Page      34:15    through    34:21
Page      40:13    through    40:21
Page      44:2     through    48:5
Page      48:7     through    48:12
Page      49:3     through    49:14
Page      49:20    through    49:23    Begins at "It would not"
Page      49:25    through    50:3
Page      50:5     through    50:11
Page      50:13    through    52:4
Page      52:6     through    52:6
Page      55:10    through    55:25
Page      58:5     through    59:22
Page      61:17    through    61:21
Page      70:3     through    70:14
Page      71:8     through    73:19
Page      73:23    through    74:11
Page      74:13    through    77:18
Page      78:1     through    81:8
Page      81:23    through    82:6


## Viola Slechta:  November 17, 2006

Page      9:7      through    10:5     Begins at:  "Do you
                                       know Cathy
                                       McSweeney"
Page      14:9     through    15:4
Page      20:21    through    21:11
Page      23:3     through    25:2
Page      33:10    through    35:10
Page      38:21    through    41:20
Page      77:17    through    78:11    Begins at:  "We
                                       talked a little about"

Mr. Kahn reserves the right to supplement his designations based upon evidence presented at trial and for purposes of impeachment and/or rebuttal.

**Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.**

**21.**

**Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.**

<u>Plaintiffs</u>:

At this time, Plaintiffs do not intend to submit trial briefs, although they reserve the opportunity to do so should an issue arise at the pre-trial conference that requires briefing.  Plaintiffs will address evidentiary issues through motions *in limine* submitted seven days prior to trial in accordance with the court's November 15, 2007 Order.

<u>Defendants</u>:

Mr. Kahn will file any trial briefs relative to the issues presented to the Court at the time of the filing of his motions in *limine* unless the Court otherwise directs. Mr. Kahn hereby incorporates by reference as if attached hereto as Attachment H-

2, all briefs filed by Mr. Kahn in support of his motions for summary judgment and in opposition to Plaintiffs' motions for summary judgment. *See* Doc. Nos. 21, 38, 85, 119, 248 and 311.

## 22.

**In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.**

**Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.**

## 23.

**If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.**

See Attachment "I".

## 24.

**Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any**

**additional time for argument, the request should be noted (and explained) herein.**

Plaintiffs:

Given the complex legal and factual issues presented in this case, Plaintiffs request that they be permitted sixty minutes to make opening arguments and sixty minutes to make closing arguments.

Defendant:

Mr. Kahn respectfully requests that he be given ninety minutes to make his opening argument, and ninety minutes to make his closing argument. The need for this additional time is due to the multiple counts that Plaintiffs have alleged against Mr. Kahn and the extensive record that has been established throughout the course of this lengthy litigation. Specifically, the parties have collected thousands of documents and introduced more than five-hundred exhibits during twenty-seven depositions. In addition to needing time to explain these documents and testimony, Mr. Kahn will also need some time to educate the jury about the nature and complexity of trusts, and specifically the various trusts that are central to this litigation.

## 25.

**If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.**

This case is designated for trial by jury.

**26.**

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on <u>December 4, 2007</u>, to discuss in good faith the possibility of settlement of this case. The court (_____) has or ( **X** ) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) **A good possibility of settlement.**
(_____) **Some possibility of settlement.**
(____) **Little possibility of settlement.**
( **X** ) **No possibility of settlement.**

**27.**

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

<u>Plaintiff</u>:

Because five of the Plaintiffs are minors or are in college, the parties would prefer a special setting to assist with planning absences in advance of trial. If, however, a special setting would unduly delay the trial, the Plaintiffs would prefer to be placed on the next available trial calendar.

<u>Defendant</u>:

Mr. Kahn respectfully requests that the Court specially set this case for trial. Several of the witnesses who may testify reside out of the State of Georgia and will

need to make travel arrangements.  Additionally, Plaintiffs Jarrod Charles Slechta and Adam Kahn Slechta, who may be called to testify, are college students who will likely need to plan for any absence from school.  Finally, the anticipated length of this trial also makes it appropriate for a special setting.

**28.**

The plaintiffs estimate that it will require six days to present their evidence. The defendant estimates that it will require five days to present its evidence.  It is estimated that the total trial time is twelve days.

**29.**

**IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (X) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.**

**IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.**

**IT IS SO ORDERED this _____ day of _____, 20_____.**


_____
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

ARNALL GOLDEN GREGORY LLP     TROUTMAN SANDERS LLP

_____     _____
Charles T. Huddleston                          Daniel S. Reinhardt
Georgia Bar No. 373975                        Georgia Bar No. 600350
charles.huddleston@agg.com                William M. Droze
Jason E. Bring                                      Georgia Bar No. 231039
Georgia Bar No. 082498                        Steven J. Hewitson
jason.bring@agg.com                           Georgia Bar No. 350398
J. Tucker Barr
Georgia Bar No. 140868                        600 Peachtree Street, N.E.
tucker.barr@agg.com                           Suite 5200, Bank of America Plaza
                                                         Atlanta, Georgia  30308
171 17th Street NW, Suite 2100            Telephone: (404) 885-3000
Atlanta, Georgia 30363                        Facsimile: (404) 885-3900
Phone: (404) 873-8500
Fax: (404) 873-8501
                                                         Robert M. Brinson
Attorneys for Plaintiffs                        Georgia Bar No. 082900
                                                         C. King Askew
                                                         Georgia Bar No. 025400
                                                         Brinson, Askew, Berry, Seigler
                                                         Richardson & Davis LLP
                                                         P.O. Box 5513
                                                         Rome, Georgia  30162
                                                         Telephone: (706) 291-8853
                                                         Facsimile: (706) 234-3574

                                                         Attorneys for Defendant