## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| CATHY KAHN MCSWEENEY (f/k/a Cathy Kahn Slechta); et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION |
| ROGER F. KAHN, | ) ) | NO. 4:05-CV-132-HLM |
| Defendant. | ) ) | |

## DEFENDANT ROGER F. KAHN'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING MR. KAHN'S WORLDLY CIRCUMSTANCES FOR PUNITIVE DAMAGE PURPOSES

COMES NOW Defendant Roger F. Kahn ("Mr. Kahn") and, pursuant to Local Rule 7.1, submits this Motion in Limine to Exclude Evidence Regarding Mr. Kahn's Worldly Circumstances for Punitive Damage Purposes as follows:

## INTRODUCTION

According to Attachment G-1 of the Consolidated Pretrial Order, Plaintiffs intend to introduce evidence of Mr. Kahn's tax returns and net worth reports. (See, e.g., Consolidated Pretrial Order [Doc. 324], Attachment G-1, Exhibits 163, 165-178.) Mr. Kahn seeks to exclude from trial Plaintiffs' Exhibits 163, 165-178, and

any other documentary or testimonial evidence related to Mr. Kahn's worldly circumstances.

Plaintiffs presumably would argue, as they have in the past, that evidence of Mr. Kahn's worldly circumstances is relevant to their claim for punitive damages. Plaintiffs, however, have been unable to provide sufficient evidence to support their claim for punitive damages, much less their claim that Mr. Kahn acted with specific intent to cause harm such that the $250,000 cap on punitive damages should be disregarded.[1]

As a quasi-criminal punishment, punitive damages must be proven by clear and convincing evidence, not simply by a preponderance of the evidence. Additionally, as a quasi-criminal punishment, application of the law regarding punitive damages must be strictly construed. When the Court applies the heightened evidentiary standard that accompanies a punitive damages award, it is undeniable that Plaintiffs' allegations of punitive damages, and certainly specific intent to cause harm, fall short. Even more telling is that the MEK Trust, which governs Mr. Kahn's conduct as a Co-Trustee, similarly requires a heightened

---

[1] Although the Court has previously ruled that Plaintiff McSweeney had established a *prima facia* case for punitive damages (see Sept. 18, 2006 Order [Doc. 163] at 50), the sole evidentiary basis for that determination was the Smooke Letter which is the subject of a separate motion in limine and itself should be excluded.

indicia of culpability before a Co-Trustee can be held liable for misconduct. Accordingly, both the law and the record support the conclusion that Plaintiffs cannot meet their burden of proving by clear and convincing evidence that Mr. Kahn is liable for punitive damages or that he acted with specific intent to cause harm.

As a result, the Court should hold, based on the law and the evidence, that no punitive damages are due to be awarded, or alternatively that the Court should impose the $250,000 cap on punitive damages set forth in O.C.G.A. § 51-12-5.1(g). To that end, assuming without conceding that Plaintiffs can demonstrate a basis for punitive damages at all, Mr. Kahn submits that Plaintiffs should only be permitted to introduce evidence which would permit a jury to establish a monetary amount in the range of $1 to $250,000. Any other evidence must be excluded as irrelevant under Federal Rules of Evidence 401 and 402; O.C.G.A. § 51-12-5.1(d)(2). Moreover, Mr. Kahn is willing to stipulate that he is able to pay up to a $250,000 judgment for punitive damages.[2] In light of this stipulation, any evidence of Mr. Kahn's worldly circumstances which may be relevant to his ability

---

[2] Mr. Kahn's willingness to stipulate to this fact is limited to admission of such stipulation in a punitive damages phase of the trial where the case is bifurcated as Mr. Kahn has urged.

to pay a punitive damages award of up to $250,000 should be excluded as duplicative and unnecessary under Federal Rule of Evidence 403.

## ARGUMENT AND CITATION OF AUTHORITY

### I.   Punitive Damages Carry a Heightened Burden of Proof and Must Be Strictly Construed.

The purpose of punitive damages is "not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." O.C.G.A. § 51-12-5.1(c). See also Colonial Pipeline Co. v. Brown, 258 Ga. 115, 118 (1988) ("Punitive damages, although civil in nature, nonetheless serve the criminal law goal of deterrence rather than the traditional compensatory goal."). Because punitive damages are penal in nature, they are comparable to criminal punishment. See Landgraf v. USI Film Prods., 511 U.S. 244, 281 (1994) ("The very labels given 'punitive' or 'exemplary' damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions."); Glazner v. Glazner, 347 F.3d 1212, 1230 (11th Cir. 2003) ("Courts repeatedly have recognized punitive damages are quasi-criminal in nature.").

The criminal nature of punitive damages requires a heightened evidentiary finding of culpability. "Punitive damages cannot be imposed without a finding of some form of culpable conduct." Colonial Pipeline, 258 Ga. at 118. Moreover, Georgia law requires that a finding of punitive damages be supported by more than

- 4 -

merely a preponderance of the evidence; rather, punitive damages must be supported by clear and convincing evidence.  See O.C.G.A. § 51-12-5.1(b) ("Punitive damages may be awarded only in such tort actions in which it is proven *by clear and convincing evidence* that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.") (emphasis added).

"Courts have more difficulty precisely defining 'clear and convincing evidence,' but they define the standard as requiring greater certainty than the preponderance of the evidence standard although perhaps less than the reasonable doubt standard."  Gardner v. Wilkinson, 643 F.2d 1135, 1137 (5th Cir. Aug. 27, 1981).[3]  In an effort to further elucidate the meaning of clear and convincing evidence, the Georgia Supreme Court has proposed the following definition:

> CLEAR AND CONVINCING EVIDENCE:   Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence, but less than beyond a reasonable doubt.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

<u>Clarke v. Cotton</u>, 263 Ga. 861, 863 (1994) (Jackson, J., concurring).  "In this regard, 'clear and convincing evidence' has been defined as evidence having a 'high capability of inducing belief,' such that 'the fact finder's mind is left with an abiding conviction that the evidence is true.'"  <u>Id.</u> (internal citations omitted).

In addition to the heightened burden of proof, courts are also encouraged to strictly construe the law of punitive damages in an effort to further safeguard the rights of defendants.

> Indeed, the Supreme Court explained in *State Farm* that, "although these [punitive damage] awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding. This increases our concern over the imprecise manner in which punitive damages systems are administered."

<u>U.S. v. Moore</u>, 174 Fed. Appx. 540, 547, n. 8 (11th Cir. 2006) (quoting <u>State Farm Mut. Auto Ins. Co. v. Campbell</u>, 538 U.S. 408, 417 (2003)).

Thus, when punitive damages are alleged, courts must strictly construe the requirements for proving punitive damages to ensure that the administration of punitive damages is precise and supported by the evidence.  To that end, courts are vested with the authority to control any presentation of evidence relevant to punitive damages.  <u>See</u> <u>Softball Country Club – Atlanta v. Decatur Fed. Sav. and Loan Assoc.</u>, 121 F.3d 649, 653 (11th Cir. 1997) ("In our view, this statute,

[O.C.G.A. § 51-12-5.1(d)(2)], read reasonably, vests trial courts with discretion to control litigants' presentation of evidence during the punitive damages phase of a trial in the same manner that courts regulate evidentiary matters generally.").

## II.    Plaintiffs Fail to Demonstrate a Basis for Any Award of Punitive Damages.

The record demonstrates no evidence, much less clear and convincing evidence, that Mr. Kahn is liable for punitive damages.  On the contrary, the record demonstrates that Plaintiff McSweeney gave Mr. Kahn a security interest in her inheritance from the MEK Trust in order for Mr. Kahn to be repaid the $287,711 that she stole from Mr. Kahn and Empire Distributors.  (Second Amended Complaint, ¶¶ 22-23.)  After the MEK Trust was distributed to the CKS Trust, Mr. Kahn negotiated with the CKS Co-Trustees regarding which assets would be used to repay Mr. Kahn and Empire.  (See Defendant Kahn's Statement of Material Facts Which Present a Genuine Issue for Trial [Doc. 247] at ¶¶ 32, 36-38.)  The CKS Co-Trustees, in addition to Plaintiff McSweeney, agreed to transfer Swallow Hopkins to Mr. Kahn in partial satisfaction of Plaintiff McSweeney's debt.  (See id. at ¶¶ 43-44, 58.)

Although Mr. Kahn had repeatedly expressed his preference for being repaid with cash, he ultimately accepted Swallow Hopkins for the value of its cost basis.  (See id. at ¶¶ 38, 52, 58.)  The children of Plaintiff McSweeney acknowledge that

they had no dealings with Mr. Kahn whatsoever related to Swallow Hopkins. (See Plaintiff Children's Responses to Mr. Kahn First Request for Admission [Doc. 288] at nos. 1, 3-9.) Accordingly, the record simply does not support by clear and convincing evidence a finding that Mr. Kahn acted with a specific intent to cause harm.

**III.   Even if the Evidence Supported a Finding That Punitive Damages Should Be Awarded, Plaintiff's Evidentiary Presentation Should Be Limited on This Record.**

Pursuant to Georgia law, after a jury has determined that punitive damages are warranted, "the trial shall immediately be recommenced in order to receive such evidence ***as is relevant*** to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case." O.C.G.A. § 51-12-5.1(d)(2) (emphasis added).[4] Georgia law further requires that unless the jury finds that "the defendant acted, or failed to act, with the specific intent to cause harm . . . the amount which may be awarded in the case shall be limited to a maximum of $250,000.00." O.C.G.A. § 51-12-5.1(f) and (g).

---

[4] Consistent with O.C.G.A. 51-12-5.1(d)(2), Mr. Kahn has requested that the Court bifurcate this trial such that only evidence regarding Mr. Kahn's alleged liability and compensatory damages is admitted during the first phase of trial and, if the jury finds liability and concludes punitive damages are warranted, a second phase would ensue to determine any amount Mr. Kahn is liable for punitive damages. (See Consolidated Pretrial Order [Doc. 324] at 6-16.)

The framework for adjudicating punitive damages must be strictly construed and the only authorized evidence is that which is relevant to the matter the jury must consider.  Strictly construing Plaintiffs' claim for punitive damages requires that the Court not disregard the $250,000 punitive damages cap before asking what "specific intent to harm" means within the law and within the record.  As stated previously, the law requires clear and convincing evidence of specific intent to cause harm before a plaintiff will be permitted to cause the $250,000 cap to be lifted.

The MEK Trust, the framing document which governs this litigation, does not support a finding that Mr. Kahn acted with a specific intent to cause harm. Fiduciary duties may be defined by the terms of the trust agreement.  See IIA Scott on Trusts, § 164 (4th ed.) ("The extent of the duties and powers of a trustee depends primarily on the terms of the trust."). The MEK Trust provides:  "Any action taken by the executor or by the trustee in good faith shall be proper."  (See Last Will and Testament of Max E. Kahn [Doc. 306, Ex. 1] at Item 10, Paragraph (d).) Accordingly, in addition to the law requiring a heightened burden of proof, the MEK Trust itself expressly affords a Co-Trustee the benefit of the doubt before he or she can be held liable.  As evidenced by the framing document, Max E. Kahn did not intend to burden his wife or his two children with potential liability so long

as they acted in good faith. The MEK Trust affords the Co-Trustees considerable flexibility in decision-making provided that their actions are in good faith. As a result, in order for Plaintiffs to prove that Mr. Kahn somehow breached his obligations under the MEK Trust, Plaintiffs must prove that Mr. Kahn acted in bad faith – a burden Plaintiffs cannot meet.

In sum, the law requires that punitive damages be strictly construed and that Plaintiffs meet a heightened burden of proof to establish specific intent to cause harm by clear and convincing evidence. Plaintiffs have failed to meet their burden because they have adduced no evidence which could possibly prove by clear and convincing evidence that Mr. Kahn specifically intended to cause them harm so as to overcome the $250,000 cap on punitive damages. Because of the lack of evidence and Mr. Kahn's proffered stipulation, this Court should find that the $250,000 cap on punitive damages applies in this action pursuant to O.C.G.A. § 51-12-5.1(g), and simplify the presentation of proof by excluding irrelevant evidence of Mr. Kahn's worldly circumstances in excess of $250,000.00.

## IV.    Evidence of Mr. Kahn's Worldly Circumstances Should Be Excluded Pursuant to Federal Rules of Evidence 401 Through 403.

Assuming without conceding that a jury were first to find that any punitive damages were warranted in this action at all, Mr. Kahn is willing to stipulate that

he is able to pay a judgment of up to $250,000 for punitive damages.[5]  Given the

$250,000 cap on punitive damages, any evidence related to punitive damages

should be restricted to address how he should be punished, penalized, or deterred

(if at all) in the range of $0 to $250,000.  Evidence of worldly circumstances

beyond $250,000 is irrelevant and should be excluded under Federal Rule of

Evidence 401 and 402.  Further, in light of Mr. Kahn's stipulation, any evidence of

Mr. Kahn's worldly circumstances would be duplicative and should be excluded

pursuant to Federal Rule of Evidence 403.  See U.S. v. O'Shea, 724 F.2d 1514,

1516 (11th Cir. 1984) ("An offer to stipulate is one factor that the trial court should

consider in making a determination under Rule 403.").

In light of Mr. Kahn's stipulation and the absence of any evidence that Mr.

Kahn acted with a specific intent to harm Plaintiffs, evidence of Mr. Kahn's

worldly circumstances beyond $250,000 would be hardly relevant, although it

would be highly prejudicial.  Specifically, evidence of Mr. Kahn's financial

circumstances would likely distract the jury from applying the law to the facts and

improperly suggest to the jury that they should contrast the financial circumstances

of Mr. Kahn against those of Plaintiffs.  Indeed, such improper evidence could

---

[5] Consistent with Mr. Kahn's request that the trial be bifurcated, this stipulation
should only be heard by the jury if the jury determines that punitive damages are
suitable.

influence the jury to award sums to Plaintiffs simply because Mr. Kahn could afford it, regardless of whether he has liability to pay under the law. This is precisely the type of unfair prejudice that Rule 403 excludes. Accordingly, Georgia's punitive damages law should be strictly construed, and the jury should be presented only with evidence that conforms to the law and the specific facts of this case. To that end, evidence of Mr. Kahn's worldly circumstances should be excluded pursuant to Rules 401, 402, and 403.

## CONCLUSION

For the foregoing reasons, evidence of Mr. Kahn's worldly circumstances should be excluded altogether because Plaintiffs have failed to demonstrate by clear and convincing evidence any basis upon which a jury could award punitive damages. Even if the Court should find some basis upon which to award punitive damages, any evidence of Mr. Kahn's worldly circumstances beyond $250,000 should be excluded based upon the statutory cap of O.C.G.A. § 51-12-5.1(g). Finally, all evidence of Mr. Kahn's ability to pay $1 to $250,000 should be excluded where he is willing to stipulate to his ability to pay up to the statutory cap, O.C.G.A. § 51-12-5.1(g), which applies on the facts of this case.

Respectfully submitted, this 19th day of March, 2008.

**TROUTMAN SANDERS LLP**

/s/ William M. Droze
Daniel S. Reinhardt
Georgia Bar No. 600350
William M. Droze
Georgia Bar No. 231039
Steven J. Hewitson
Georgia Bar No. 350398

600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, Georgia  30308
(404) 885-3000
(404) 885-3900 (fax)

**BRINSON, ASKEW, BERRY,
SEIGLER, RICHARDSON &
DAVIS, LLP**

_____/s/_____
Robert M. Brinson
Georgia Bar No. 082900
C. King Askew
Georgia Bar No. 025400
A. Franklin Beacham, III
Georgia Bar No. 043743

P.O. Box 5513
Rome, Georgia 30162-5513
(706) 291-8853
(706) 234-3574 (fax)

*Attorneys for Defendant
Roger F. Kahn*

- 13 -

## CERTIFICATE OF COMPLIANCE

I hereby certify that the within and foregoing *Defendant Roger F. Kahn's Motion in Limine to Exclude Evidence of Mr. Kahn's Worldly Circumstances for Punitive Damages Purposes* was prepared using Times New Roman font (14 point).

/s/ William M. Droze
William M. Droze

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing *Defendant Roger F. Kahn's Motion in Limine to Exclude Evidence of Mr. Kahn's Worldly Circumstances for Punitive Damages Purposes* upon all parties of record by *hand delivery* and by filing a copy of the pleading via electronic means through the Court's ECF system, with electronic service upon:

Charles T. Huddleston, Esq.
Jason E. Bring, Esq.
Arnall Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia  30363-1031

This 19th day of March, 2008.

/s/ William M. Droze
William M. Droze

- 14 -