IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

CATHY KAHN MCSWEENEY (f/k/a
Cathy Kahn Slechta), et al.,

       *Plaintiffs*,

v.

ROGER F. KAHN,

       *Defendant*.

CIVIL ACTION NO.
4:05-CV-132-HLM

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS

COME NOW Plaintiffs Jarrod Charles Slechta, Adam Kahn Slechta, Amanda Gail Slechta, Jordan Turc Slechta, and Anna Marie McSweeney ("Plaintiffs") and submit this, their Memorandum of Law in Support of Renewed Motion to Compel Production of Documents, stating as follows:

### INTRODUCTION

This is the second time Plaintiffs have come before the Court to compel the production of documents from Mr. Britt, counsel for the RK Trust, Est. 1979 (the "RK Trust"), after issuing subpoenas to Mr. Britt and his firm in December of 2009. (*See* December 15, 2009 Notice of Service of Subpoena [583].)   When initially served with the subpoenas, Mr. Britt and his client (collectively,

"Respondents") answered by making blanket and unsubstantiated assertions of attorney-client privilege.  (*See* Dec. 31, 2009 Objection to Subpoenas [591]; Dec. 31, 2009 Mot. to Quash Subpoenas [592]; Jan. 19, 2010 Reply Br. in Supp. of Mot. to Quash Subpoenas [595]; Jan. 26, 2010 Mot. for Protective Order [597]; Jan. 26, 2010 Aff. in Supp. of Mot. for Protective Order [598]; Feb. 2, 2010 Br. in Supp. of Mot. for Protective Order [600]; Feb. 3, 2010 Resp. in Opp'n to Mot. to Compel [601].)  The Court, however, afforded Respondents the opportunity to belatedly produce a privilege log, which, the Court reasoned, would "allow the subpoenaing party, and the Court, to assess the claim of attorney-client privilege."  (*See* Feb. 4, 2010 Order at p. 14 [602].)

Having now had the opportunity to review Respondents' privilege log, it appears that Plaintiffs' concerns regarding the blanket assertion of privilege were well-founded.  The log produced by Respondents contains scores of entries in which parties outside the attorney-client relationship (including Plaintiffs' counsel) were involved in allegedly privileged communications.  Several of those communications, moreover, appear to be intractably connected with the fraudulent transfers Plaintiffs are now challenging in *Slechta v. Kahn*, Civil Action No. 4:09-CV-00206-HLM (N.D. Ga. 2009) (the "Fraudulent Transfer Action").

For all the reasons set forth herein, Plaintiffs respectfully ask that the Court compel the production of documents from Respondents, both on grounds that the privilege is facially inapplicable to the communications identified on Respondents' log, and on the basis of the crime-fraud exception to the attorney-client privilege.

## PERTINENT FACTUAL BACKGROUND

### I.     The Facts Motivating the Issuance of the Subpoenas

Plaintiffs are judgment creditors of Defendant Roger Kahn.  Plaintiffs' collection efforts on their judgment, however, have been impeded by Defendant Kahn's recently pronounced insolvency.  In particular, Defendant Kahn—who, as recently as 2005, held himself out as having a personal net worth approaching $30 million—now claims to lack the financial ability to pay the judgment, having transferred virtually all of his assets to the RK Trust (of which he is the principal beneficiary) or to select other third-parties.  (*See* Decl. of Edward A. Marshall [hereinafter, "Marshall Decl."] ¶ 3; *Slechta v. Kahn*, Civil Action No. 4:09-CV-00206-HLM (N.D. Ga. 2009) [hereinafter, the "Fraudulent Transfer Action"], Answer [35] ¶¶ 40 & 42.)

A substantial number of these asset transfers took place shortly after the Court denied Defendant Kahn's motion for summary judgment on March 15,

2007.  (*See* Mar. 15, 2007 Order [289].)  Less than three weeks after receiving word of that adverse decision, Defendant Kahn purported to transfer tens of millions of dollars of his personal assets into the RK Trust in ostensible satisfaction of (seemingly backdated) promissory notes he had executed in favor of the RK Trust.  (*See* Marshall Decl. ¶ 5; Fraudulent Transfer Action, Def.'s Mot. to Dismiss [23], at Exs. 11 & 12.)  From what Plaintiffs have deciphered in post-judgment discovery, the impetus for these transfers was an April 4, 2007 letter sent by Mr. Britt, as attorney for the RK Trust, to Defendant Kahn, demanding the satisfaction of these notes.  (*See* Marshall Decl. ¶ 8 & Ex. E.)[1]

Mr. Britt's letter is remarkable.  Most notable among its features is how unabashed the RK Trust trustees—Messrs. James Union and William Gwaltney—were in their scheme to deny Plaintiffs satisfaction of any potential judgment. The letter expressly states that it is being sent in reference to *this* case, identifying it by name and case number on the "Re:" line.  Immediately after making this reference, the letter continues:

> Both serving trustees of the RK Trust, Jim Union and William W. Gwaltney[,] agree that your current situation renders the trust insecure with regard to the funds loaned or advanced by the trust to you.

---

[1]   Plaintiffs first obtained a copy of Mr. Britt's April 4, 2007 letter in post-judgment discovery from Defendant Kahn in September 2009, approximately nine (9) months after initially requesting that Defendant Kahn produce documents.

(*See id.*)  Presumably, the "current situation" referred to in the letter was this Court's denial of Defendant Kahn's motion for summary judgment just three weeks prior.  (*See* Mar. 15, 2007 Order [289].)  The letter goes on to state that, "[b]ased upon a recent schedule of [Defendant Kahn's] assets[,] there will likely be a shortfall" between those assets and the amount necessary to pay off Defendant Kahn's ostensible "indebtedness" to his trust—an acknowledgement that the anticipated transfers would leave Defendant Kahn (technically) insolvent and, thus, effectively judgment proof.  (*See* Marshall Decl. ¶ 8 & Ex. E.)

It is Plaintiffs' suspicion that Defendant Kahn himself instructed Mr. Britt to issue this demand—to him—calling the (backdated) promissory notes due. The timing of the asset transfers, among other things, would seem to support this.  Indeed, Mr. Britt's letter, demanding that Defendant Kahn make payments to the RK Trust, was mailed to Defendant Kahn in Florida from Mr. Britt's Marietta, Georgia offices the *exact same day* that Defendant Kahn purported to transfer approximately $22 million worth of assets into the RK Trust.  (*See* Marshall Decl. ¶ 5.)  Plainly, Defendant Kahn had to have known that the letter was coming.  Although postal delivery may be prompt and attorney action in response to a demand letter may be expedient, Defendant Kahn's ability to

coordinate the transfers of tens of millions of dollars worth of assets the same day a demand letter was sent to him excludes any reasonable inference other than that he was complicit in the demand.

In any event, to better understand, *inter alia*, the exact circumstances under which the April 4, 2007 letter was written, as well as the interaction between Defendant Kahn and the RK Trust related to the transfers that followed, Plaintiffs served Mr. Britt and his firm with subpoenas seeking the production of documents on December 17, 2009.  (*See* Marshall Decl. ¶ 7.)

## II. Respondents' Initial Refusals to Produce Documents and Plaintiffs' (First) Motion to Compel

As explained in prior filings before the Court, Respondents produced only one, single page document in response to Plaintiffs' subpoenas—Mr. Britt's April 4, 2007 letter.   They emphatically resisted making any further production, asserting—repeatedly—that the remaining documents responsive to Plaintiffs' subpoenas were shielded by the attorney-client privilege.   (*See* Dec. 31, 2009 Objection to Subpoenas [591]; Dec. 31, 2009 Mot. to Quash Subpoenas [592]; Jan. 19, 2010 Reply Br. in Supp. of Mot. to Quash Subpoenas [595]; Jan. 26, 2010 Mot. for Protective Order [597]; Jan. 26, 2010 Aff. in Supp. of Mot. for Protective Order [598]; Feb. 2, 2010 Br. in Supp. of Mot. for Protective Order [600]; Feb. 3, 2010

Resp. in Opp'n to Mot. to Compel [601].)  Their claims to privilege, however, were unaccompanied by the privilege log mandated by FED. R. CIV. P. 45(d)(2).

In the face of this anemic production, Plaintiffs moved the Court to require the production of responsive documents from Respondents, arguing that Respondents' failure to produce a privilege log (despite multiple requests that one be produced) had waived the privilege.  (*See* Jan. 14, 2010 Pls.' Mot. to Compel [594].)  Although acknowledging that finding a waiver of the privilege was one option available to it, the Court declined, for the time being, to deem the privilege waived.  (*See* Feb. 4, 2010 Order at p. 9 [602].)  Rather, the Court afforded Respondents an additional opportunity to produce a privilege log, directing them to deliver a privilege log to Plaintiffs by no later than March 8, 2010.  (*Id.* at p. 20.)

On March 16, 2010, Respondents produced the log ordered by the Court. (*See* Mar. 16, 2010 Certificate of Service [605].)[2]

## III.    Respondents' Privilege Log

Respondents' log revealed their earlier assertions of privilege to be ill-founded.  First, a substantial number of the communications identified in the log

---

[2]      Plaintiffs consented to a Motion for an Extension of Time to Comply with the Order at the request of Respondents.  (*See* Feb. 25, 2010 Unopposed Mot. [603].)

involved parties with no apparent nexus to the alleged attorney-client relationship between Mr. Britt and the RK Trust (*e.g.*, Suzie Belle, Don Donnelly, Stuart Finestone, Virginia Harman, Suzie and John Membree, Barbara Lesseur, Tim Oberst, James Ottley, Helen Sledge, D. Smith, Lester Tate, Jack and Linda West, Jason White, and Marvin Zion).[3]  To this day, Respondents have failed to identify many of these individuals or to explain how communications shared with them could conceivably remain subject to the privilege.

Likewise, despite Respondents' earlier assertions that Mr. Britt and his firm had "[n]ever represented Roger Kahn, individually" (*see* Jan. 26, 2010 Aff. of Daniel L. Britt, Esq. [598] ¶ 6), several communications listed on the log involved Defendant Kahn.  And, while Defendant Kahn at one time served as co-trustee to the RK Trust, most of the communications identified on the log occurred *after* Defendant Kahn delegated all his authority to act as co-trustee to William Gwaltney, and promised to "refrain from acting as co-trustee during the term of th[e] delegation[.]"  (*See* Marshall Decl. ¶ 4 & Ex. B.)  What is more, several communications involved not only Defendant Kahn, but his *personal* counsel and their assistants (including, *e.g.*, William Droze, Gretchen Farmer, Stephen

---

[3]      Elsewhere, Respondents have asserted that communications with Stuart Finestone and Jason White are privileged because the RK Trust owns an interest in the entities which Messrs. Finestone and White represent.  Plaintiffs do not believe that fact alone justifies application of the attorney-client privilege to such communications.

Hewitson, Harry M. Krumenauer, Jacob Maurer, Ronald G. Neiwirth, Yoshimi Smith, David Vaughn, Dawn White, Robert Wildstein, and Jerome Wolfe, as well as Cindy Bastos), underscoring, again, that the communications could only have involved Defendant Kahn in his *individual* capacity—a capacity which, as Respondents concede, Defendant Kahn never occupied as a "client" of Mr. Britt and his firm.  (*See* Jan. 26, 2010 Aff. of Daniel L. Britt, Esq. [598] ¶ 6; *see also* Mar. 16, 2010 Certificate of Service [605] (purporting to identify roles of various actors).)

In addition, the log contains entries reflecting communications between Mr. Britt and the putative remainder beneficiaries of the RK Trust.  But, Respondents have failed to make any showing that Mr. Britt and his firm had entered into an attorney-client relationship directly with those beneficiaries.

Finally, despite this Court's earlier guidance that "billing statements . . . ordinarily are not protected by the attorney-client privilege" (*see* Feb. 4, 2010 Order at p. 17), Respondents' initial production included invoices that were redacted almost in their entirety.  Indeed, *every* entry describing the work Mr. Britt performed for the RK Trust was completely blacked-out, and, as a consequence, the documents failed to reveal what work Mr. Britt allegedly did for the RK Trust, and at whose direction.  (*See* Marshall Decl. ¶ 13 & Ex. F.)

Supplemental production by Respondents has done little to shed light on these entries.  (*See* Marshall Decl. ¶¶ 20-21 & Exs. M & N.)

## IV.    Counsel's Unsuccessful Efforts to Resolve their Disputes

On April 2, 2010, counsel for Plaintiffs wrote Respondents and identified the foregoing concerns related to the privilege log, requesting a substantive response to the issues raised in their letter by April 8, 2010.  (*See* Marshall Decl. ¶ 13 & Ex. G.)  Instead, what they received was a demand by Respondents that Plaintiffs identify all the affected documents by "privilege log and Bates number" and the affected invoice entries by "date, invoice number and entry[.]" (*See* Marshall Decl. ¶ 15 & Ex. H.)[4]  In his response, moreover, Mr. Britt also noted that he would be leaving the country and would not return for two weeks. (*See id.*)  He declined Plaintiffs' request to discuss the issues raised in their letter prior to his departure.  (*See* Marshall Decl. ¶ 16.)

Ultimately, however, Mr. Britt sat down with Plaintiffs' counsel at his offices on April 21, 2010 to discuss the concerns raised in their April 2, 2010 letter.  (*See* Marshall Decl. ¶ 19.)  Regrettably, the parties were unable to resolve

---

[4]      Such identification, at least prior to any dialogue between counsel regarding which conceptual areas of disagreement they could bridge, would have been a Sisyphean task.  If the parties could not agree, conceptually, on the contours of the attorney-client privilege, then identifying the individual entries that were the subject of their disagreements would have been a laborious exercise of no practical utility.

the disputes identified herein at that meeting.  (*See* Marshall Decl. ¶ 20.)  As a consequence, Plaintiffs are once again forced to request intervention by the Court.

**ARGUMENT AND CITATIONS TO AUTHORITY**

**I.      Respondents Have Failed to Show the Application of the Privilege**

"The attorney client privilege is not absolute.  Because it serves to obscure the truth, it [is] construed as narrowly as is consistent with its purpose." *United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1990) (citations omitted). Accordingly, "in order to invoke this privilege, the claimant must establish[,]" *inter alia*, that a communication was made between the attorney and his client "without the presence of strangers" to the attorney-client relationship and "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not . . . for the purpose of committing a crime or tort." *Id.* (citations omitted).  "[A]t the point where attorney-client communications are no longer confidential, *i.e.*, where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987).

Furthermore, "the burden of establishing entitlement to the attorney client privilege is on the one who raises it." *Choat v. Rome Indus., Inc.*, 462 F. Supp. 728, 732 (N.D. Ga. 1978); *accord Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003); *Adler v. Wallace Computer Servs., Inc.*, 202 F.R.D. 666, 674 (N.D. Ga. 2001); *Peterson v. Baumwell*, 414 S.E.2d 278, 280 (Ga. Ct. App. 1991). To make the required showing, moreover, "the producing party bears the burden of establishing an evidentiary basis (such as an affidavit) to support *each* element of each privilege or work product protection sought, for *each* question or *each* document." *See Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 721-22 (D. Md. 2009) (collecting cases; emphasis supplied). That is a burden that Respondents—despite multiple opportunities—have failed to meet.

The parties to the attorney-client relationship between Mr. Britt and the RK Trust were Mr. Britt, on the one hand, and the Co-Trustees of the RK Trust, acting in that capacity, on the other. *See Rhone v. Bolden*, 608 S.E.2d 22, 29-31 (Ga. Ct. App. 2004). Prior to March 6, 2007, those Co-Trustees were Mr. Union and Defendant Kahn. After March 6, 2007, according to the documents produced by Respondents in the Fraudulent Transfer Action, they were Mr. Union and Mr. Gwaltney. (*See* Marshall Decl. ¶ 4 & Ex. B; Fraudulent Transfer Action, Def.'s Mot. to Dismiss [23], at Ex. 10.)

Nevertheless, Respondents' privilege log reveals that Respondents assert the privilege with respect to scores of communications involving "strangers" to the attorney-client relationship.   As detailed above, these communications involve (i) persons with no apparent nexus to the attorney-client relationship whatsoever; (ii) Defendant Kahn (following his delegation of his co-trustee status to Mr. Gwaltney), and Defendant Kahn's personal counsel; and (iii) the RK Trust's remainder beneficiaries.   Nothing produced by Respondents would sustain the application of the privilege with respect to these communications. Accordingly, Plaintiffs respectfully ask the Court to compel these documents' production.[5]

## II.   Respondents' Redactions to the Billing Statements are Improper

As this Court has already recognized, "billing statements . . . ordinarily are not protected by the attorney-client privilege."   *See* Feb. 4, 2010 Order at p. 17; *accord O'Neal v. United States*, 258 F.3d 1265, 1276 (11th Cir. 2001); *see also Chesapeake & Ohio Ry. Co. v. Kirwan*, 120 F.R.D. 660, 665 (S.D. W. Va. 1988) ("The edited portions of counsel's invoices and supporting documents describe, in very general terms, the work performed. Such information is not protected by the privilege.").   Nevertheless, the billing statements produced by Respondents in

---

[5]        An appendix of the affected log entries is attached hereto as Appendix "A."

response to Plaintiffs' subpoenas are heavily redacted.  Indeed, in their initial production, not a *single* word of a *single* entry escaped Respondents' black pen. (*See* Marshall Decl. ¶ 13 & Ex. F.)  In their more recent, supplemental production, the overwhelming bulk of the entries remain completely redacted, revealing virtually nothing about the work counsel for the RK Trust billed to their clients. (*See* Marshall Decl. ¶¶ 20-21 & Exs. M & N.)  Notably, among the most heavily redacted entries were those immediately surrounding Mr. Britt's April 4, 2007 correspondence.   Indeed, the disclosed entries on the billing statement conspicuously stop on the May 1, 2007 invoice with the entry, "Motion for Summary Judgment Denied."  (*See* Marshall Decl. at Ex. M.)

Plaintiffs certainly do not begrudge Respondents the opportunity to redact certain entries, *in part*, to obscure the subject of a particular research task or the substance of a particularly revealing communication (between attorney and client), insofar as such information, if disclosed, would betray heretofore undisclosed mental impressions on the part of Mr. Britt.  For example, Plaintiffs would not object to a billing entry that stated:

Spoke with Roger re: sending demand letter; research ███████ ████████████ in connection with same

Plaintiffs do not believe, however, that it is proper to take the approach employed by Respondents, and to instead produce a billing statement whose entries, in large part, read:

███████████████████████████████████████████

Production of such invoices is of little use to anyone.  Thus, Plaintiffs would respectfully ask that the Court compel the production of *unredacted* billing statements by Respondents in response to Plaintiffs' subpoenas.

### III.   Plaintiffs Are Entitled to the Production of Certain Documents Pursuant to the Crime-Fraud Exception

Plaintiffs also request that the Court compel the production of certain documents pursuant to the crime-fraud exception to the attorney-client privilege.  To be clear, this is not a request that Plaintiffs make lightly.

"It is well recognized that if a client seeks legal advice for the purpose of committing either a tort or a crime, the substance of that conversation is not protected by the attorney-client privilege."  *In re Grand Jury Investigation No. 83-30557*, 575 F. Supp. 777, 780 n.2 (N.D. Ga. 1983); *Both v. Frantz*, 629 S.E.2d 427, 434 (Ga. Ct. App. 2006) ("Communications . . . which occur before the perpetration of a fraud or commission of a crime and which relate thereto are not protected by the privilege.").  Legal services obtained by a client to assist him in effecting

fraudulent transfers within the meaning of the Uniform Fraudulent Transfer Act (the "UFTA") are, of course, subject to that exception.  *See, e.g., See McDonald v. H & S Homes, LLC*, Civ. Action No. 5:08-CV-298(CAR), 2009 WL 4251174, at *4 (M.D. Ga. Nov. 23, 2009) (communications regarding alleged fraudulent transfers subject to crime-fraud exception); *Both*, 629 S.E.2d at 434 (holding likewise).

Application of the crime-fraud exception to the privilege entails a two-step inquiry.  "First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice."  *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987).  "Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it."  *Id.*; *see United States v. Cleckler*, 265 Fed. Appx. 850,  853 (11th Cir. 2008) (unpublished) (holding likewise; application of exception reviewed for abuse of discretion).

While the foregoing showing cannot be made on "mere allegations of criminality[,]" *see id.*, a party asserting the exception need not come forward with "conclusive proof" of fraud.  *See McDonald v. H & S Homes, LLC*, Civ. Action No.

5:08-CV-298(CAR), 2009 WL 4251174, at *4 (M.D. Ga. Nov. 23, 2009).  Rather, all that is required is "a prima facie showing that the communications in question were made in furtherance of illegal or fraudulent activity." *Id.*  Stated differently, what is required is "some foundation in fact" for the assertion of fraud.  *Id.*  As to the second prong of the inquiry, moreover, "the requirement that legal advice must be related to the client's criminal or fraudulent conduct should not be interpreted restrictively." *In re Grand Jury Investigation*, 842 F.2d at 1227.  Indeed, counsel "need not have been aware that he was assisting" his client in committing fraud "in order for the crime-fraud exception to apply." *Id.*

Here, the April 4, 2007 letter that Mr. Britt sent to Defendant Kahn—the sole document initially produced by Respondents in response to Plaintiffs' subpoena—sustains the required showing.  By its plain text, it is advocating the transfer of assets that the law defines as *per se* fraudulent.

In particular, the UFTA deems fraudulent, *inter alia*, "[a] transfer made by a debtor . . . to an insider for an antecedent debt, [where] the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." *See* O.C.G.A. § 18-2-75(b).[6]  Here, Defendant Kahn was a

---

[6]     The statute also requires that the creditor asserting the fraud be one "whose claim arose before the transfer was made."  *See* O.C.G.A. § 18-2-75(b).  Although Plaintiffs had not yet obtained a judgment against Defendant Kahn at the time the $22 million in transfers took place,

"debtor" *vis-à-vis* Plaintiffs, because he was, as this Court's judgment against him later demonstrated, "a person who is liable on a claim." *See* O.C.G.A. § 18-2-72(4). The RK Trust, moreover, of which he is the principal beneficiary and former co-trustee, is an "insider" within the meaning of the UFTA. *See* O.C.G.A. § 18-2-72(7) (defining "insider" with reference to non-exhaustive list of potential transferees); *see also* UNIFORM FRAUDULENT TRANSFER ACT § 1 cmt. 7 (1984), http://www.law.upenn.edu/bll/archives/ulc/fnact99/    1980s/ufta84.htm (recognizing that concept of "insider" for purposes of UFTA derives from bankruptcy law, and that "a trust may be found to be an insider of a beneficiary"); *In re Bryan*, 415 B.R. 454, 484 (Bankr. D. Colo. 2009) (treating trust as insider); *Blood v. Nofzinger*, 834 N.E.2d 358, 370 (Ohio Ct. App. 2005) ("An insider includes a family or retirement trust when the transferors retain control over the trust and its property, act as trustees, or receive the benefits of the trust. The creation of such trusts is a 'popular' method of effecting fraudulent transfers, and transfers to such trusts are 'fairly easy' to set aside.") (citations omitted); *cf. In re Moss*, 258 B.R. 405, 426 (Bankr. W.D. Mo. 2001) (holding similarly).

---

their right to recover against Defendant Kahn, arising from the 1996 transfer of their inheritance interest to Defendant Kahn, nevertheless constitutes a "claim" within the meaning of the UFTA. *See* O.C.G.A. § 18-2-71(3) (defining a "claim" as a "right to payment, *whether or not the right is reduced to a judgment*," regardless of whether that right is "unliquidated, . . . disputed, . . . or unsecured.") (emphasis supplied).

Furthermore, Mr. Britt's letter treated Defendant Kahn's (backdated) promissory notes to his trust as an "antecedent debt," and acknowledged that Defendant Kahn was, or, by making the transfers demanded therein, would become, insolvent.  (*See* Marshall Decl. ¶ 8 & Ex. E.)

Given the foregoing, there is at least *prima facie* evidence before the Court that Defendant Kahn's transfers, made in response to the demand, were fraudulent within the meaning of the UFTA.  Any communications between Mr. Britt and Defendant Kahn leading up to the issuance of that letter, moreover, are at least "related" to the transfers that Defendant Kahn made in response thereto. Accordingly, Plaintiffs respectfully request that the communications between Mr. Britt and Mr. Kahn leading up to those transfers be produced pursuant to the crime-fraud exception.[7]

## IV.    Request for Fees

Plaintiffs should not be required to file a motion every time they wish to obtain compliance with a subpoena served on an entity, person, or firm associated with Defendant Kahn.  After months of seeking documents from Respondents, Plaintiffs have, to date, received only one letter, some engagement reports, and heavily redacted billing statements in response to their December

---

[7]    An appendix of the affected log entries is attached hereto as Appendix "B."

2009 subpoenas.  The privilege objections raised by Respondents in response to those subpoenas were, and remain, baseless.  Nevertheless, Plaintiffs have once again been put to the task of dismantling each of those objections in court filings, which, in turn, requires the Court's involvement to facilitate document exchanges that the drafters of the Federal Rules envisioned would occur voluntarily.  That is a burden that neither the Plaintiffs, nor the Court, should be required to bear.

Accordingly, Plaintiffs respectfully request that the Court award them their reasonable expenses, including attorneys' fees, as a sanction pursuant to Rule 37 and/or Rule 45.  *See* FED. R. CIV. P. 37(a)(5)(A) ("If the motion [to compel] is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."); FED. R. CIV. P. 45(e) ("The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena.").

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that their Motion to Compel be granted, that Respondents be required to produce the documents identified in the appendices hereto, and that Plaintiffs be awarded their reasonable expenses, including attorneys' fees, associated with having to file this motion.

This 11th day of May, 2010.

ARNALL GOLDEN GREGORY LLP

/s/ Edward A. Marshall
Allen I. Hirsch
Georgia Bar No. 357100
Jason E. Bring
Georgia Bar No. 082498
Edward A. Marshall
Georgia Bar No. 471533
Attorneys for Plaintiffs

171 17th Street, N.W.
Suite 2100
Atlanta, Georgia  30363-1031
Telephone:  (404) 873.8660
Facsimile:  (404) 873.8661
allen.hirsch@agg.com
jason.bring@agg.com
edward.marshall@agg.com

Appendix "A"

Privilege Log Entries Identifying "Strangers" to Attorney-Client Relationship

| Entries Involving Strangers to Attorney-Client Relationship (Other than Roger Kahn, Individually, and His Personal Counsel) | |
|---|---|
| Log Entitled: "McSweeney v. Roger Kahn et al. (Active NDGa)" | 18, 36, 42, 46, 49, 50, 51, 53, 59, 137, 141, [Two Unnumbered Entries After 143], 168, 200, 203, 207, 209, 212, 221, 224, 228, 229, 261, 266, 267, 308, 310, 329, 332, 338, 339, 341, 343, 345, 348, 350, 351, 353, 356, 360, 362, 364, 367, 371, 377, 381, 382, 392, 397, 399, 400, 402, 404, 406, 410, 414, 418, 421, 424, 426, 433, 440, 442, 443, 444, 447, 448, 449, 451 |
| Log Entitled: "Jarrod Charles Slechta et al v. Roger Kahn et al" | 4, 9, 13, 15, 17, 19, 22, 24, 27, 37, 39, 44, 47, 58, 60, 62, 64, 66, 69, 71, 72, 75, 82, 88, 94, 110, 116, 118, 123, 132, 135, 140, 144, 147, 150, 153, 157, 161, 174, 176, 180, 183, 187, 191, 195, 201, 207, 213, 219, 227, 250, 259, 269, 280, 284, 290, 307, 309, 310, 315, 324, 329, 338, 341, 347, 371, 378, 381, 388, 401, 407, 411 |
| Log Entitled: "In re RK Trust – Trust Admin" | 2, 36, 72, 73, 74, 79, 80, 93, 95, 97, 99, 126, 130, 136, 141, 147, 148, 150, 152, 153 |
| Entries Involving Defendant Kahn in Individual Capacity, at times, with Individual Counsel Involved | |
| Log Entitled: "McSweeney v. Roger Kahn et al. (Active NDGa)" | 18, 26, 29, 32, 36, 42, 44, 45, 47, 53, 55, 59, 62, 63, 64, 67, 68, 71, 74, 75, 80, 83, 86, 89, 93, 94, 97, 98, 100, 135, 137, 139, 140, 141, 143, [Two Unnumbered Entries After 143], 144, 146, 147, 148, 150, 152, 155, 160, 161, 163, 165, 168, 172, 173, 174, 180, 182, 183, 185, 193, 194, 195, 196, 197, 199, 200, 203, 207, 209, 212, 215, 216, 217, 219, 221, 223, 224, 226, 227, 228, 229, 230, 231, 232, 234, 235, 238, 241, 243, 246, 249, 253, 254, 255, 256, 257, 260, 265, 267, 268, 269, 271, 273, 277, 283, 288, 293, 296, 303, 306, 307 308, 310, 312, 313, 315, 317, 319, 320, 322, 324, 326, 327, 329, 332, 333, 334, 335, 336, 338, 339, 341, 343, 345, |

| | |
|---|---|
| | 348, 350, 351, 353, 356, 360, 362, 364, 367, 369, 371, 373, 374, 376, 377, 378, 381, 382, 387, 388, 389, 392, 396, 399, 400, 402, 404, 406, 410, 414, 418, 421, 424, 426, 431, 432, 434, 436, 440, 442, 443, 444, 445, 446, 447, 448, 449, 451, 457, 453, 460, |
| Log Entitled: "Jarrod Charles Slechta et al v. Roger Kahn et al" | 1, 3, 4, 7, 9, 10, 12, 13, 15, 17, 19, 22, 24, 27, 29, 32, 34, 37, 39, 44, 47, 51, 54, 58, 60, 62, 68, 69, 71, 72, 75, 78, 82, 88, 94, 101, 110, 116, 118, 120, 121, 123, 124, 125, 126, 128, 130, 132, 133, 135, 137, 140, 142, 143, 144, 147, 150, 153, 157, 161, 165, 174, 176, 180, 183, 187, 191, 195, 201, 207, 213, 219, 227, 236, 243, 250, 259, 269, 280, 284, 290, 292, 293, 294, 298, 301, 307, 309, 310, 315, 324, 328, 329, 331, 334, 338, 341, 347, 348 358, 369, 371, 378, 388, 391 (Mr. Britt was apparently blind copied), 392, 396, 397, 401, 407, 408, 409, 411, 414 |
| Log Entitled: "In re RK Trust – Trust Admin" | 7, 8, 10, 11, 12, 14, 16, 19, 22, 24, 25, 27, 35, 36, 37, 43, 47, 52, 57, 60, 65, 74, 79, 80, 82, 83, 85, 87, 90, 95, 97, 99, 101, 103, 105, 111, 112, 114, 115, 116, 121, 123, 126, 130, 135, 137, 139, 141, 143, 146, 152, 153, 156, 157, 183, 195, 204 |
| **Entries Involving RK Trust Beneficiaries, Other than Defendant Kahn** | |
| Log Entitled: "McSweeney v. Roger Kahn et al. (Active NDGa)" | 267 |
| Log Entitled: "Jarrod Charles Slechta et al v. Roger Kahn et al" | |
| Log Entitled: "In re RK Trust – Trust Admin" | 36 |

<u>Appendix "B"</u>
Privilege Log Entries Subject to Crime-Fraud Exception

| | |
|---|---|
| Log Entitled: "McSweeney v. Roger Kahn et al. (Active NDGa)" | 10, 11, 12, 13, 14, 18, 21, 23, 24, 28, 29, |
| Log Entitled: "Jarrod Charles Slechta et al v. Roger Kahn et al" | |
| Log Entitled: "In re RK Trust – Trust Admin" | 1, 3 |

## CERTIFICATE OF COMPLIANCE

By his signature, and as required by Local Rule 7.1.D., counsel for Plaintiffs certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.B, namely, Book Antiqua (13 point).

/s/ Edward A. Marshall
Edward A. Marshall
Georgia Bar No. 471533

2795462v1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing

MEMORANDUM OF LAW using the CM/ECF system, and have caused a copy

of the foregoing to be served by hand on the following counsel of record:

Robert D. Wildstein                         Daniel L. Britt , Jr.
BODKER RAMSEY ANDREWS WINOGRAD              BRITT & ASSOCIATES - ATTORNEYS, LLC
& WILDSTEIN                                 Suite 660
3490 Piedmont Road                          3625 Cumberland Boulevard
Suite 1400 One Securities Centre            Atlanta , GA 30339
Atlanta , GA 30305-4808

          This 11th day of May, 2010.


                                            /s/ Edward A. Marshall
                                            Edward A. Marshall
                                            Georgia Bar No. 471533

2795462v1